UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD CHRISTOPHER WHITE,<br>Plaintiff,<br>v.<br>BMO BANK N.A.,<br>Defendant. | Case No. 25-cv-07717-JST<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 15 |

Before the Court is Defendant BMO Bank N.A.'s motion to dismiss. ECF No. 15. The Court will grant the motion.

## I. BACKGROUND

The following facts are drawn from the complaint and from documents incorporated by reference into the complaint. *Knievel v. ESPN*, 393. F.3d 1069, 1072 (9th Cir. 2005); Federal Rule of Civil Procedure 10(c); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

In December 2020, Defendant BMO Bank N.A. ("BMO") authorized electronic ("ACH") transfers that exceeded the balance of Plaintiff Todd White's account, triggering the bank's overdraft services even though White had opted out of the overdraft services when he signed up for the account. ECF No. 1 at 2–3. Because BMO had authorized the transactions, White's account took on a negative balance, leading BMO to assess overdraft fees totaling $70. *Id*. ¶¶ 8–9; ECF No. 15-1 at 9 (account statement noting two fees of $35 assessed on December 17 and 18, 2020). The fees were reversed within days. *Id*. at 13 (account statement noting reversal and refund of both fees on December 29, 2020). On January 20, 2021, BMO closed White's for failure to cure a $159 negative balance, which did not include the overdraft fees. ECF No. 1 at

United States District Court
Northern District of California

13.[1]

White alleges that BMO unilaterally closed his account and reported the account closure and negative balance as "UNPAID" to credit reporting agency ChexSystems. ECF No. 1 ¶¶ 11, 12. On or about October 29, 2024, he disputed the accuracy of the negative account reporting directly with ChexSystems. *Id.* ¶ 14. As part of the dispute procedure, BMO verified to ChexSystems that the information it provided was "accurate and complete." *Id.* ¶ 16; *id.* at 13. At White's request, ChexSystems reinvestigated, again verifying the accuracy of the information and labeling White's request "frivolous and irrelevant." *Id.* at 13, 15. White alleges that the negative reporting has caused other financial institutions to deny him banking services. *Id.* ¶ 13.

On September 10, 2025, White filed the instant action, alleging five claims against BMO: (1) violation of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, and its implementing Regulation E, 12 C.F.R. § 1005.17(b); (2) violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b); (3) breach of contract; (4) negligence; and (5) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. ECF No. 1. The Court, in granting White's application to proceed *in forma pauperis*, screened his complaint under 28 U.S.C. § 1915(e). ECF Nos. 2, 8. It dismissed White's negligence claim under the economic loss rule but otherwise allowed his claims to proceed. ECF No. 8 at 5.[2]

On February 25, 2026, BMO filed a motion to dismiss White's four remaining claims under Federal Rule of Civil Procedure 12(b)(6). ECF No. 15. White opposed on March 9, 2026,

[1] In the complaint, White alleges that he incurred $159 in overdraft fees, ECF No. 1 ¶ 9, but the bank statements show that he was only charged $70 in overdraft fees; $159 is instead the "charge off amount"—the total remaining overdraft on his account at the time the bank closed it. ECF No. 15-1 at 9, 13, 22.

[2] White suggests that because the Court did not find dismissal warranted under Section 1915(e), "the defendant's motion [to dismiss] should be viewed effectively as an improper motion for reconsideration." ECF No. 16 at 1. But "Section 1915 does not obligate the court to screen for every possible defect in a complaint, nor is the screening process infallible." *Harris v. Lappin,* No. EDCV 06–00664 VBF, 2009 WL 789756 at *3 (C.D. Cal. March 19, 2009). Also, even when the Court does not dismiss the complaint after screening under Section 1915(e), "neither § 1915 nor the Federal Rules of Civil Procedure preclude [the defendant] from filing (or the Court from granting) a motion to dismiss." *DesAutel v. Tetra Tech EC, Inc.*, No. CV-11-187-EFS, 2012 WL 274743, at *4 (E.D. Wash. Jan. 31, 2012), *aff'd,* 549 F. App'x 668 (9th Cir. 2013).

and BMO replied on March 18. ECF Nos. 16, 17.

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367(a).

## III. Incorporation by Reference

### A. Legal Standard

Under the doctrine of incorporation by reference, "courts may take into account 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (quoting *Knievel*, 393 F.3d at 1076). Incorporation by reference serves to "[p]revent[] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based," *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (abrogated by statute on other grounds), or to those which might "doom" claims alleged in the complaint, *Khoja*, 899 F.3d at 1002. Courts may incorporate extrinsic evidence by reference where it is (1) central to the complaint or (2) referenced extensively by the plaintiff. *Khoja*, 899 F.3d at 1002 (citing *United States v. Ritchie*, 342 F.2d 903, 907 (9th Cir. 2003)). Extensive references usually occur more than once, though a single reference within a complaint may be "sufficiently extensive" if lengthy enough. *Khoja*, 899 F. 3d at 1003; *see Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

### B. Discussion

In moving to dismiss the complaint, BMO seeks to incorporate by reference: White's complete account statements for the period referenced in the complaint (Exhibits 1 and 2); copies of the letters from ChexSystems to White regarding the investigation of the accuracy of the information BMO furnished to ChexSystems (Exhibits 3 and 4); and the January 2019 and December 2020 Deposit Account Disclosures for Personal Accounts—the contract governing White's bank account (Exhibits 5 and 6). ECF No. 15-1. White opposes BMO's request on the grounds that the court may not use extrinsic documents to resolve factual disputes and that the defendant's documents are cherry-picked. ECF No. 16 at 4–5 (citing *Khoja*, 899 F.3d at 1003).

With respect to Exhibits 1 and 2, the Court finds that the account statements form the basis

of White's EFTA, FRCA, and UCL claims and are referenced extensively by White in his initial pleading. The basis for White's EFTA, FCRA, and UCL claims is that BMO improperly assessed overdraft fees and overdrew his account after White opted out of overdraft services. ECF No. 1 at 3–4, 6. Moreover, White repeatedly references his opt-out election, which appears on the account statements, and alleges that he was charged $159 of improper fees, a figure that is revealed by the account statements to be a negative account balance rather than the total fees assessed. ECF No. 15-1 at 5, 12, 13. Finally, White himself attaches the first page of his account statements, but not the subsequent pages recording the details of his transactions, including the actual overdraft fees he was charged. ECF No. 1 at 9, 11; ECF No. 15-1 at 9, 13. In seeking to prevent consideration of these documents, White now engages in the exact cherry-picking that incorporation by reference doctrine intends to prevent. *See In re Facebook, Inc. S'holder Derivative Priv. Litig.*, 367 F. Supp. 3d 1108, 1118 (N.D. Cal. 2019). Thus, the Court incorporates by reference Exhibits 1 and 2.

Exhibit 3 and 4 attached to BMO's motion to dismiss are two letters from ChexSystems informing White that his reinvestigation of BMO's negative reporting was pending and then completed. ECF No. 15-1 at 16–26. White attached the first page of each of these letters to his initial complaint. ECF No. 1 at 12–15. The letters form the basis of White's FCRA claim, as White claims that BMO's violation of FCRA occurred when it "failed to conduct a reasonable investigation or correct the information" after White disputed the reporting with ChexSystems. ECF No. 1 at ¶ 26. Thus, the Court incorporates by reference Exhibits 3 and 4.

Finally, BMO requests to incorporate Exhibits 5 and 6 as forming the basis of White's breach of contract claim. ECF No. 15-1 at 3. Because this order dismisses White's contract claim with prejudice without relying on Exhibits 5 and 6, the request is denied as moot.

Therefore, the Court incorporates by reference Exhibits 1, 2, 3, and 4, but not Exhibits 6 and 6. ECF No. 15-1. The Court now turns to Defendant BMO's motion to dismiss.

## IV. MOTION TO DISMISS

### A. Legal Standard

"The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 8, a complaint does not require "detailed factual allegations," but demands more than "an unadorned defendant-unlawfully-harmed-[plaintiff] accusation," and may not be too speculative. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is proper where a plaintiff has failed to allege "sufficient factual matter" to support a legally cognizable claim or to move their claim out of the realm of mere possibility into facial plausibility. *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

On motion to dismiss, a court will take all factual allegations pleaded as true, construing them in the light most favorable to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Documents filed pro se should be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### B. Discussion

#### 1. EFTA Claim

BMO moves to dismiss White's EFTA claim on three grounds: that White failed to give BMO notice of any alleged error;[3] that BMO remedied the error by reversing the overdraft fees; and that the claim is barred by the statute of limitations. ECF No. 15 at 11. Because the claim is indeed time-barred, it is dismissed with prejudice.

[3] Although the EFTA only imposes a duty on financial institutions to correct errors upon timely notice from the consumer, 15 U.S.C. § 1693f(a), and White does not allege that he provided such notice, it appears to the Court that an overdraft fee charged in violation of 12 C.F.R.§ 1005.17(b) may not be an "error" within the meaning of the statute, 15 U.S.C. § 1693f(f) (listing several errors among which erroneously charged fees are not included). Neither White nor BMO provides authority helpful to resolving this question. Finding that the statute of limitations bars White's claim, the Court declines to resolve the notice issue.

The EFTA imposes certain obligations on financial institutions acting as "participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). Regulation E, which implements the EFTA and contains provisions governing overdraft services, provides that a financial institution violates the EFTA if it "assess[es] a fee or charge on a consumer's account for paying an ATM or one-time debit card transaction pursuant to the institution's overdraft services" unless the consumer has affirmatively consented to such fees. 12 C.F.R. § 1005.17(b). Any action under the EFTA must be brought within one year of the alleged violation. 15 U.S.C. § 1693m(g).

BMO correctly argues that because the violation in question occurred in December 2020 and January 2021 when White's account was overdrawn and overdraft fees were assessed, the claim became untimely after January 2022. While some courts recognize that successive EFTA violations restart the statute of limitations anew for each violation, *see*, e.g., *Kaiser v. USAA Life Insurance Co.*, 818 F. Supp. 3d 607, 616 (S.D.N.Y. 2026), White does not allege any EFTA violations after January 2021. ECF No. 1 at 3–4.

White argues that the Ninth Circuit recognizes equitable tolling in in EFTA claims "where the plaintiff exercised reasonable diligence but was unable to discover the violation" but cites no authority for that argument. ECF No. 16 at 12–13. In general, White is correct that plaintiffs asserting equitable tolling must allege "facts sufficient to establish that they acted with diligence to discover the basis of their . . . claims" and were nonetheless unable to do so. *Oliver v U.S. Bank, N.A.*, No. 11–CV–04300–LHK, 2012 WL 2376677, at *8 (N.D. Cal. 2012). But White does not plead any facts demonstrating that his conduct falls into this category. *Id*. Indeed, because White alleges that his account was closed shortly after the overdraft fees were assessed and because he (erroneously) attributes the closure to the charged fees, he appears to have been made aware of them at that time. White does argue that he "could not have discovered the latent harm to his credit reputation until he was denied banking services," but he does not say when he was denied banking services, and in any case, what matters is when he discovered the violation, not the downstream harm that resulted. *See Mangum v. Action Collection Service, Inc.*, 575 F.3d 935, 941 (9th Cir. 2009) ("Under the doctrine of equitable tolling, the statute of limitations begins to run on

United States District Court
Northern District of California

the date that the plaintiff discovered or could have discovered the violation.").

Because this claim is time-barred, amendment would be futile and dismissal with prejudice appropriate. *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) (upholding denial of leave to amend as futile where claims were time-barred).

**2. FCRA Claim**

BMO moves to dismiss White's Fair Credit Reporting Act ("FCRA") claim because he does not sufficiently allege that BMO acted "willfully or negligently" to violate FCRA. ECF No. 15 at 12–15. BMO further argues that the claim is time-barred. *Id.* White fails to state a claim for a violation of FCRA, although such a claim would not be time-barred.

The purpose of the FCRA is to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. V. Burr*, 551 U.S. 47, 52 (2007). FCRA imposes two duties upon entities which act as "furnishers" of financial information to Credit Reporting Agencies ("CRAs"): (1) to provide accurate information, 15 U.S.C. § 1681s-2(a), and (2) to investigate the accuracy of reported information upon a consumer's dispute, 15 U.S.C. § 1681s-2(b). A bank's duty to investigate allegedly inaccurate information is triggered by notification from the CRA of the consumer's dispute. *Id.* § 1681s-2(b)(1); *Dehorney v. Ocwen Loan Servicing, LLC*, No. 518CV2191SBKKX, 2021 WL 1156858, at *2 (C.D. Cal. Feb. 16, 2021); *Biggs v. Experian Info. Sols., Inc.*, 209 F. Supp. 3d 1142, 1144 (N.D. Cal. 2016). FCRA confers a private right of action for willful or negligent noncompliance with its requirements, but that private right of action does not apply to Section 1681s-2(a). *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009) (citing 15 U.S.C. §§ 1681, 1681o); *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059–60 (9th Cir. 2002). FCRA claims must be brought within two years of the date the plaintiff discovered the alleged violation or within five years of the violation itself. 15 U.S.C. § 1681p.

First, White's FCRA claim is not barred by the statute of limitations. BMO's duty to investigate a consumer dispute under FCRA was triggered when ChexSystems notified it of White's dispute, on or around October 29, 2024. ECF No. 1 ¶ 14. Only after that point could White have filed an action under Section 1681s-2(b) for a willful or negligent failure to investigate

his dispute. *See Ellis v. Advanta Bank*, No. 16-CV-06437-BLF, 2017 WL 4842069, at *1 (N.D. Cal. Oct. 26, 2017) ("[A] cause of action under the FCRA begins to accrue once the consumer discovers that the furnisher's investigation was unreasonable."). He filed his complaint in September of 2025, ECF No. 1, comfortably within the statute of limitations.

Second, White incorporated by reference into his complaint documents showing that (1) BMO did investigate his dispute and (2) the information reported to ChexSystems was in fact accurate. ECF No. 15 at 13. Namely, his bank statements show that White was charged $70 of overdraft fees which were shortly reversed, and that his account was closed because of a negative balance not attributable to the overdraft fees but to charges exceeding his balance. ECF No. 15-1 at 9, 13. In addition, White attaches letters from ChexSystems stating that BMO had investigated and "reinvestigated" his claims. ECF No. 1 at 13, 15. White alleges that "BMO's verification of inaccurate information" and characterization of the dispute as "frivolous and irrelevant" demonstrate BMO's willful noncompliance with FCRA, but he has not demonstrated that BMO provided inaccurate information to ChexSystems or that White's dispute was not in fact frivolous. ECF No. 1 ¶ 27. He explains in opposition that "continuing to report a debt that the bank knows . . . is based on illegal fees constitutes reckless disregard for the consumer's rights," but again, the debt was not caused by or otherwise "based on" illegal fees because those fees were reversed weeks before the account was closed. ECF No. 16 at 8; ECF No. 15-1 at 13.

BMO's motion to dismiss the FCRA claim is granted with leave to amend.

### 3. Breach of Contract Claim

BMO moves to dismiss White's breach of contract claim because it is time-barred and because White cannot allege that BMO breached any terms of the contract. ECF No. 15 at 14–15.

To properly plead a claim for breach of contract under California law, a plaintiff must demonstrate: (1) the existence of a contract; (2) his own performance or excuse for nonperformance; (3) defendant's breach; and (4) damages resulting from the defendant's breach. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Contract claims must be brought within four years of the plaintiff discovering, or having reason to discover, the defendant's breach. Cal. Code Civ. Pro. § 337.

The Court agrees that White's contract claim is untimely. White argues that Section 337's four-year statute of limitations "does not bar a claim where the breach was hidden from the consumer's immediate view" without citing authority. ECF No. 16 at 13. White does not allege facts which show that the breach was hidden from his view. According to White, the breach occurred when BMO "fail[ed] to honor Plaintiff's opt-out election . . . allowing his account to be overdrawn despite a consistently high balance, charging improper fees, and then closing the account . . . ." ECF No. 1 ¶ 32. Thus, the alleged breach occurred in January 2021 at the latest. ECF No. 15-1 at 4–15. White filed the instant action on September 10, 2025. ECF No. 1. Because the statute of limitations runs from the time of the alleged breach—and because White either did know or had reason to know that BMO overdrew his account, charged overdraft fees (which were later reversed), and closed his account in January 2021—the breach of contract claim is untimely and is dismissed with prejudice. *See Apple Inc. v. Allen Associates Limited*, 445 F. Supp. 3d 42, 60 (N.D. Cal. 2020) ("Because Plaintiff has not plead[ed] facts to support a tolling theory, its Complaint is barred under the four-year state of limitations.").

**4. California Unfair Competition Law Claim**

BMO moves to dismiss White's claim under the UCL because White did not plead any "unlawful" or "unfair" practice and because it is barred by the statute of limitations. ECF No. 15 at 15.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Codes § 17200. A business practice is unlawful if it violates "[v]irtually any state, federal, or local law." *Davis*, 691 F.3d at 1168. To properly plead under the "unfair" prong, a plaintiff must demonstrate (1) that harm to the consumer outweighed the utility of the challenged conduct or (2) that conduct was contrary to some "public policy as declared by 'specific constitutional, statutory, or regulatory provisions.'" *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010). A plaintiff must bring an action under the UCL within four years of the claim's accrual, Cal. Bus. & Prof. Code § 17208, typically when the last element of the claim has been met. *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1191 (2013). Claims under the UCL are subject to such exceptions as delayed discovery and continuous accrual; the statute of limitations begins to

United States District Court
Northern District of California

run for each individual UCL violation when the plaintiff discovers it. *Id*. at 1191–94.

The Court begins with BMO's argument that the claim is time-barred by the four-year statute of limitations. To the extent that the UCL claim is predicated on White's EFTA claims, it is time-barred because White discovered the EFTA violation in January 2021 and did not bring this action until September 2025. *See* ECF No. 1; ECF No. 15-1 at 4–15.

To the extent predicated on White's FCRA claims, the UCL claim is timely, since the duty under FCRA was triggered some time after October 29, 2024, when White discovered that BMO had not conducted a reasonable investigation in response to his dispute. ECF No. 1 ¶ 14. However, since the Court has concluded that White has failed to plead a FCRA violation, any UCL "unlawfulness" claim based on the FCRA violation also fails. *See Johnson v. PNC Mortg.*, No. 14-CV-02976-LB, 2016 WL 861089, at *8 (N.D. Cal. Mar. 7, 2016) ("Because a UCL claim is premised on other violations, it rises or falls with the underlying infraction.").

In addition, White has failed to sufficiently plead a claim under the UCL's unfair prong. White does not plead that BMO's alleged "unfair" practice is contrary to any public policy nor that its harm outweighed its utility. ECF No. 1 ¶ 41; ECF No. 16 at 11. While White argues that "[c]harging a customer for services they explicitly rejected, and then using the resulting debt to exclude them from the global banking system" is "'immoral, unethical, oppressive, or unscrupulous and causes substantial injury to consumers,'" documents incorporated by reference into the complaint show that BMO did no such thing. ECF No. 16 at 11. Rather, as the Court has explained, the complaint and incorporated documents show only that White overdrew his account, BMO allowed those charges to be processed, and then BMO charged him fees that were quickly reversed. Absent any explanation from White about why *that* conduct was unfair, the Court dismisses his claim without prejudice.

/ / /

/ / /

/ / /

/ / /

/ / /

United States District Court
Northern District of California

## CONCLUSION

The Court dismisses White's EFTA and Breach of Contract claims against BMO with prejudice. Within 28 days of the date of this order, White may file an amended complaint realleging only the FCRA and UCL claims, curing the deficiencies identified in in this order. White may not add any new claims or parties.

**IT IS SO ORDERED.**

Dated: September 10, 2026

JON S. TIGAR
United States District Judge